## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MITCHELL SIMMER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Case No. CIV-21-361-GLJ** |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| **Acting Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

### OPINION AND ORDER

The claimant Mitchell Simmer requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act. He appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]"  42 U.S.C. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].  The term "substantial evidence" requires "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  *Id*. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC.  Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was fifty-three years old at the time of the administrative hearing. (Tr. 421, 689). He completed the eleventh grade and has worked as lawn sprinkler installer. (Tr. 413, 757). He alleges he became unable to work on the amended alleged onset date of November 24, 2014, due to bilateral knee problems, back pain, neck pain, diabetes, and depression. (Tr. 756).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on December 28, 2018. His applications were denied. ALJ Christopher Hunt conducted an administrative hearing on January 21, 2021 and determined that the claimant was not disabled in a written decision dated February 2, 2021 (Tr. 398-415). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step two, he found the claimant had the severe impairments of degenerative disc disease of the neck, degenerative joint disease, obesity, bilateral carpal tunnel syndrome, low IQ/borderline intellectual functioning, and adjustment with mixed anxiety and depressed mood. (Tr. 400-

401).  At step three, he determined that the claimant did not meet a listing.  (Tr. 401-404).

At step four, he found the claimant had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) & 416.967(b), *i.e.*, he can sit/stand/walk up to six hours each in an eight-hour workday and frequently grasp, handle, and have fine motor manipulation, and occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but that he cannot climb ladders/ropes/scaffolds or be around unprotected heights.[2]  As to his mental impairments, the ALJ found the claimant can perform at a reasoning level of 2 and below (as defined by Appendix C of the Dictionary of Occupational Titles ("DOT")), which is to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations.  Additionally, he found the claimant can have occasional contact with coworkers and supervisors, cursory and superficial contact with the general public, work with things rather than people, and that he has a limited ability to read, write, and use numbers.  (Tr. 404-405).  The ALJ then determined that although the claimant could not return to his past relevant work, he was nevertheless not disabled at step five because there was work in the economy that he could perform, *i.e.*, small product assembler, packer inspector, and conveyer line assembler.  (Tr. 413-414).

## Review

On appeal, the claimant contends that the ALJ erred by failing to properly account

_____

[2] The written opinion states the claimant "can climb ladders, ropes, scaffolds, or unprotected heights," but this statement appears to contain a typographical error such that the ALJ likely meant the claimant is restricted from these functions.  The undersigned Magistrate Judge declines to address it further because this restriction is unrelated to the reasons for the present appeal, that is, the claimant's mental impairments.

for his cognitive and mental impairments, including: (i) failing to develop the record as to his low IQ/borderline intellectual functioning; (ii) failing to account for moderate limitations in concentration, persistence, and pace; (iii) failing to properly incorporate the state reviewing physician findings regarding interaction only on a superficial work basis with coworkers and supervisors; and (iv) failing to properly specify his RFC limitations when he used the imprecise term "limited ability" with regard to his ability to read, write, and do math. The Court agrees that the ALJ failed to properly assess the claimant's RFC with regard to his first, third, and fourth arguments, and that the case should be remanded to the ALJ.

The medical evidence as to the claimant's mental impairments and cognitive deficits reflects mostly normal findings regarding his mental status, with occasional findings of mild depression and feeling down, depressed, or hopeless in 2017 and 2018. (Tr. 924, 957, 971). Dr. Ken Abernathy, D.O., noted anxiety/depression as a diagnosis for the claimant during a physical consultative examination on March 23, 2019. (Tr. 1226-1228). Additionally, 2019 treatment records for the claimant record his education level and learning disability with regard to reading. (Tr. 1349, 1439).

On May 6, 2019, Dr. Joseph James, Psy.D., LPC, conducted a mental status examination. (Tr. 1310). He noted the claimant reported grief and depression, as well as homelessness, following the loss of his wife four years previously. (Tr. 1310). Dr. James further noted that the claimant endorsed symptoms of generalized anxiety, social anxiety disorder, and impaired/poor memory. (Tr. 1311-1312). Dr. James observed that his memory appears poor, although his attention and concentration were sufficient and he

appeared to be a good historian, observing that the claimant appeared to display below average intelligence for what appears to be a low IQ. (Tr. 1312). Dr. James's diagnostic impressions included adjustment disorder with depressed mood, and possibly borderline intellectual functioning, and he recommended additional intelligence testing. (Tr. 1312-1313). He indicated that these impairments might affect his functioning with regard to memory and social interaction/adaptability, and that his ability to understand work/school-related activities might be impaired due to a significant cognitive deficit. (Tr. 1313). Furthermore, he stated that the claimant's capacity to execute tasks of daily living appeared "severely impaired for occupational and educational purposes as the claimant appears functional in their current lifestyle or circumstance, but in a more independent setting, might display difficult[y] with self-direction requiring additional support." (Tr. 1313). Finally, he noted the claimant's reports of sleeping on the street for a large portion of four years, stating that verification would be helpful. (Tr. 1313).

State reviewing physicians determined initially and upon reconsideration that the claimant can understand, remember, and carry out simple and some more detailed instructions with routine supervision; relate to supervision and others on a superficial work basis; and adapt to a work environment. (Tr. 468, 503).

At the administrative hearing, the claimant testified that he completed the eleventh grade, but that he was in special education classes and repeated two years of schooling. (Tr. 432). Additionally, he testified that he has problems reading, which has been a problem in his work. (Tr. 432). In discussing Dr. James's statement regarding borderline intellectual functioning with the ALJ, the claimant's representative requested an IQ test,

noting that Dr. James had recommended one. The ALJ essentially agreed that one would be helpful for the record but stated that they were not being conducted due to the COVID-19 pandemic. (Tr. 443-444).

In his written opinion at step four, the ALJ extensively summarized the medical evidence in the record, as well as the claimant's hearing testimony. (Tr. 406-413). The ALJ briefly acknowledged Dr. Abernathy's diagnoses, including anxiety/depression. (Tr. 407). As to Dr. James's exam findings, the ALJ noted Dr. James's statement that the claimant might not be capable of engaging in common work/learning-related mental tasks due to a low IQ, as well as Dr. James's diagnostic impressions. (Tr. 408). He further summarized the treatment record with regard to the claimant's depression, noting that while it was documented over the years, most exams were largely normal. (Tr. 411-412). After summarizing the treatment record, the ALJ concluded that the claimant could perform within the assigned RFC. (Tr. 412). The ALJ stated that he was not persuaded that the claimant might not be capable of engaging in common work/learning-related mental tasks due to a low IQ, stating that Dr. James's opinion was not given in "vocationally relevant terms," his notes are "vague" as to the severity of basic cognitive functions, he did not define the term "impaired" with regard to memory and cognitive ability, and other exams consistently noted normal memory. (Tr. 412). He found the state reviewing physician opinions as to his mental impairments partially persuasive, but that the claimant would be *more* limited than their opinions suggested, due to the low IQ/borderline intellectual functioning as noted by Dr. James (whose opinion he found, inexplicably, not persuasive on the issue of cognitive functions). (Tr. 412). The ALJ ultimately determined that the

claimant was not disabled.

The claimant asserts that the ALJ erred in assessing his RFC with regard to his mental and cognitive impairments. He contends, in part, that the ALJ erred in finding he could have *occasional contact* with the co-workers and supervisors but cursory and *superficial* contact with the general public, when both state reviewing physicians found that he could relate to supervision and others on a *superficial work basis* (Tr. 468, 503). An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7.

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are:

(i)  supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered.  *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Generally, the ALJ is not required to explain how the other factors were considered.  *Id.*  However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record.  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  Here, the Court finds that the ALJ erred in assessing the persuasiveness of these opinions when he crafted an RFC that appeared to equate "occasional" with "superficial" without explanation or

clarification.  While the Tenth Circuit has not made a definitive ruling on this question, other courts have held that "'occasional' and 'superficial' are not coterminous." *Wood v. Commissioner of Social Security*, 2019 WL 1614591, at *3 (S.D. Ohio, April 16, 2019) (collecting cases).  "'Occasional contact' goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interaction." *Wartak v. Colvin*, 2016 WL 880945, at *7 (N.D. Ind. March 8, 2016) ("Perhaps the ALJ determined that a shift in the frequency of contact would compensate for the depth of contact; but the ALJ does not say so, and there is no support for such a finding in the record.").  This error raises questions as to the claimant's RFC and is not harmless because it brings into question the step five findings, which are based on the RFC.  (Tr. 413-414, 440).  *See Wood*, 2019 WL 1614591, at *3 ("In finding Plaintiff not disabled, the ALJ relied on responses to hypotheticals he posed to the Vocational Expert ("VE") that only limited an individual to "occasional contact."  Therefore, the ALJ failed to meet his burden at Step Five because the Court cannot discern whether the additional limitation -- to "superficial contact" -- would preclude substantial gainful employment in the national economy.").  *See also Eveland v. Berryhill*, 2017 WL 3600387, at *5 (N.D. Ind. Aug. 22, 2017) ("The error is compounded because the hypotheticals to the [VE] did not include any limitation to 'superficial interaction' with supervisors and coworkers.") (*citing Wartak*, 2016 WL 880945, at *7).  The Court therefore finds that remand is appropriate here.  *See Greene v. Saul*, 2020 WL 4593331, at *4 (N.D. Ind. Aug. 11, 2020) ("Because the ALJ in this case made no attempt to explain the basis for his decision to limit Mr. Greene to 'occasional

interaction' rather than 'superficial interaction,' the ALJ failed to build an accurate logical bridge between the evidence and the RFC.  This failure warrants remand.").

The claimant likewise contends that the ALJ erred in failing to order a consultative examination related to his IQ, and the Court agrees.  The Court first acknowledges the ALJ's broad latitude in deciding whether to order consultative examinations. *See Hawkins v. Chater*, 113 F.3d 1162, 1166-1167 (10th Cir. 1997) (Once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment.").  In this case, the claimant's counsel specifically requested further IQ testing at the administrative hearing, noting Dr. James's consultative exam findings, and the ALJ stated that he "probably agreed" it would be helpful, which is sufficient to carry the claimant's burden.  *See Id.*, 113 F.3d at 1167-1168 ("Ordinarily, the claimant must in some fashion raise the issue sought to be developed, which, on its face, must be substantial. . . . [I]n a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.  *In the absence of such a request by counsel*, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.") (emphasis added).  Furthermore, the constraints surrounding the COVID-19 pandemic have abated somewhat and are insufficient to prevent his presentation for testing now that the case is to be remanded.  The Court thus finds that the ALJ should order a consultative examination on remand.  *See* 20 C.F.R. §§ 404.1519(b) ("We may purchase a consultative examination [] when the evidence as a whole is insufficient to allow us to make a determination or decision on your

claim.").  The Court further finds that this testing could provide additional specificity and directly inform the RFC on remand with regard to the claimant's heretofore undefined "limited ability" to read, write, and perform mathematical functions.  Currently, there is no direct information in the record on this other than the claimant's testimony from the administrative hearing that he has problems with reading which have always been a problem in his work, and his report to Dr. James that he received assistance with reading and spelling in high school.  (Tr. 432, 1312).

Finally, the claimant contends that the ALJ's assigned RFC failed to account for moderate limitations in concentration, persistence, and pace that were identified at step three of the sequential evaluation.  At step three, the ALJ indeed found moderate limitations in concentration, persistence, and pace, noting he had a poor attention span and concentration with a slow response at a March 8, 2017 routine exam.  (Tr. 404, 925).  He further stated, however, that the claimant had testified he could pay attention as long as he needed, could drive (indicating an ability to avoid distractions), and prepare meals (indicating he could complete tasks in a timely manner).  (Tr. 404).  The RFC did not contain any corresponding or correlative limitations.  (Tr. 404-405).

The Tenth Circuit has stated that an "ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015).  Although "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations," *Id.*, at 1204, the Court finds here that the RFC limitations adequately accounted for his

moderate limitations unless the additional testing on remand should further inform this finding. *See Nelson v. Colvin*, 655 Fed. Appx. 626, 629 (10th Cir. 2016) ("Unskilled work does not require . . . the ability to maintain attention and concentration for extended periods, an area in which Dr. Tabor noted a moderate limitation.").

Because the ALJ failed to properly develop the record and evaluate the opinions in the record as to the claimant's mental and cognitive impairments, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 21st day of December, 2022.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**

-13-